[Civ. No. 10095. First Appellate District, Division Two.—December 31, 1936.]

H. H. BECHTEL, Respondent, v. RUSSELL C. WILSON et al., Appellants.

Randolph V. Whiting, Breed, Burpee & Robinson and Snook & Snook & Chase for Appellants.

C. H. White, Louis Ferrari, G. D. Schilling and Caxton P. Rhodes for Respondent.

NOURSE, P. J.—Plaintiff sued as assignee for a deficiency judgment upon a promissory note secured by a deed of trust. The note and deed of trust were executed by the Wilsons and the Filmers to secure the payment to the Oakland Bank of the sum of $30,000 used in the purchase of

real property. After acquiring title the Wilsons and the Filmers conveyed the property to the Real Estate Corporation which thereupon put the property on the market for sale by lot, the tract having been subdivided into four hundred and eight lots. Approximately eighteen or twenty lots were thus sold and, in accordance with the terms of the deed of trust, partial reconveyances were made by the trustees so that the corporation could pass good title to the purchasers of the respective lots. Also in accordance with the terms of the deed of trust the proceeds of these sales, made before forfeiture, were deducted from the amount loaned by the bank. With a balance of over $21,000 due on the note the trustees gave notice of sale under the deed of trust, and the remaining lots were sold for $16,000. The judgment herein is for $10,715.53, the balance remaining due, with interest, after application of the net proceeds of the sale to the indebtedness.

The case presents no unusual facts or circumstances and no undetermined questions of law. It is a simple action on a promissory note secured by a deed of trust where the proceeds of the sale failed to meet the indebtedness. The judgment against the guarantors in the note does not raise any difficult question of law, but it will be treated separately because of their separate appeals.

██ The first point raised by the defendants Wilsons and Filmers is that the plaintiff failed to exhaust his security because all the lots listed in the deed of trust were not listed in the notice of sale. The difference lies in the number of lots sold to individual purchasers during the time the property was in the hands of the Real Estate Corporation. These sales were strictly in accordance with the terms of the contract of the parties, and the trial court had ample evidence to support its finding that the trustees' sale covered all the remaining property and exhausted the security of the deed of trust. *Bank of Italy* v. *Bentley*, 217 Cal. 644 [20 Pac. (2d) 940] ; *Howe* v. *Tucker*, 219 Cal. 193 [25 Pac. (2d) 832], and similar cases are cited by these appellants, but they have no application to the facts of this case. In the authorities cited, suit was brought on the promissory note before any sale was had under the deed of trust securing it and without any attempt to enforce the security. Here the true effect of the contract of security was that as the in-

dividual lots were sold partial conveyances should be made, the proceeds of the sales should be deducted from the face of the note, and the remaining lots should be security for the balance unpaid under the note.

The second point raised by these defendants attacks the sufficiency of the posting of the notice of sale. It is claimed that separate notices were not posted on each of the lots sold, but that in some cases these lots were grouped under one notice. The question of fact here presented is one in which the evidence is conflicting, but we need not consider it because the recitals in the trustees' deed of due and proper posting is made conclusive evidence thereof by the deed of trust and this alone is sufficient to sustain the trial court's findings on that issue. (*Sorensen* v. *Hall*, 219 Cal. 680 [28 Pac. (2d) 667]; *Stevens* v. *Plumas Eureka Annex Min. Co.*, 2 Cal. (2d) 493 [41 Pac. (2d) 927]; *Central Nat. Bank* v. *Bell*, 5 Cal. (2d) 324 [54 Pac. (2d) 1107]; *Cobb* v. *California Bank*, 6 Cal. (2d) 389 [57 Pac. (2d) 924].)

These appellants cite *Mersfelder* v. *Spring*, 139 Cal. 593, 595 [73 Pac. 452], but it does not help them. It was there said that there might be an exception to this rule so that it should not preclude ''the inquiry in an equitable proceeding into the fairness of the sale, or into other matters which on equitable principles might entitle the party injured to relief''. This is not such a proceeding. If these appellants were asking equitable relief (which they are not) they would be first required to do equity (which they do not offer to do).

The Bank of America, as successor in interest to the Oakland Bank, received the sum of $325 from the Real Estate Corporation after the notice of default and before the trustees' sale, and received about $3,800 after the trustees' sale from the contract purchasers. These moneys were not credited upon the note but were held by the bank in trust under an agreement with the corporation that if the bank became the purchaser at the trustees' sale it would credit the sums to the contract purchasers as payments on their individual lots. These were conditional payments not made to the beneficiary for the purposes of the trust, but made and accepted for a special purpose independent of the trust. This was all so thoroughly discussed and agreed to before any of the moneys were paid into the bank that the

evidence leaves no room for the present contention of these appellants that their default was waived by these transactions. "Waiver always rests upon intent" (*Wienke* v. *Smith*, 179 Cal. 220 [176 Pac. 42]) and, when the parties by every known safeguard and precaution demonstrate their intention that there should be no waiver, the courts will not imply a waiver in the face of the known intention. .

Since all these moneys were received after the forfeiture, they became no part of the proceeds applicable to the debt created by the promissory note, but were moneys which by agreement came to the bank only in the event that it became owner of the property through the foreclosure sale. If another party had acquired the property at the foreclosure sale these payments would have accrued to that party through the sale, and we can see no difference in the result because of the fact that the beneficiary under the note was also made a trustee for this special purpose. It is true, as suggested by appellants, that the assignment by the corporation of these sales contracts provided that the payments should be credited upon the principal indebtedness, but the evidence showed that, before this assignment was accepted or acted upon, it was modified in that respect by the agreement of the parties. This was an issue sharply disputed at the trial, but the finding adverse to the appellants is fully supported by the evidence.

Next it is argued that the makers of the note by conveyance of the land to the Real Estate Corporation became mere sureties, and were released by subsequent contracts between the beneficiary and the corporation. The evidence discloses that after the note was executed and the loan made by the bank the makers conveyed the property to the Real Estate Corporation, but it also appears that the corporation did not join in the execution of the note, that it did not assume the indebtedness in the deed which it took from the makers of the note, and that the bank was not shown to have any knowledge of the intended transfer when the loan was made. There was ample evidence to support the findings of the trial court that the Wilsons and the Filmers were the principal debtors and that the corporation took the property subject to the trust but that there was no waiver or release of the principal debtors by the bank.

The bank purchased the property at the trustees' sale for the sum of $16,000. There was only one other bid—one for $7,000. The appellants argue that the sale was inequitable because of the low price, but they say nothing more. Since the execution of the note and the trustees' sale were both before the effective date of the enactment of section 580a of the Code of Civil Procedure, the inadequacy of the price realized is not a ground in this proceeding for voiding a sale legally made, but the appellants were required to make proof of fraud or inequitable conduct of the sale. (*Bechtel* v. *Clemons*, 12 Cal. App. (2d) 309 [55 Pac. (2d) 531]; *Central Nat. Bank* v. *Bell*, 5 Cal. (2d) 324 [54 Pac. (2d) 1107]; *Stevens* v. *Plumas Eureka Annex Min. Co.*, 2 Cal. (2d) 493 [41 Pac. (2d) 927].)

In their separate appeals the Bancrofts urge that since they were guarantors and endorsers of the note only and not of the deed of trust, they should be relieved of all charges for taxes and expenses paid under the terms of the deed of trust. They cite *Chinn* v. *Penn*, 179 Cal. 153 [175 Pac. 687]. That was a case of a foreclosure of a mortgage in which the mortgagee sought to charge the guarantor for taxes and other expenses in excess of the principal obligation. It is not authority for the contention that a guarantor of a note secured by a deed of trust is only liable for the difference between the gross proceeds of the trustees' sale and the amount then due upon the original obligation. In such a case the court is justified in holding that the guaranty was made in contemplation of the note and the deed of trust and that accordingly his liability is the same as that of the makers of the note. (*McConnell* v. *Herbert*, 2 Cal. (2d) 66 [38 Pac. (2d) 781].)

Finally, the appellants Wilson raise the point that they should have had judgment on their cross-complaint against the appellants Filmer because of an agreement of the latter to hold the former harmless from all debts of the Real Estate Corporation. The point is merely stated in this form without any argument, citation of authority, or reference to evidence or finding, other than a reference to a copy of the agreement. We are not required to search the record to find error when a point is presented in this manner.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 30, 1937, and the following opinion then rendered thereon:

THE COURT.—Three groups of attorneys, representing a like group of appellants, have petitioned for a rehearing, and all profess dissatisfaction with the statement of facts in the opinion. All the facts stated are proved either by direct evidence or by presumptions and legal inferences which must be drawn from the facts proved. Counsel have all overlooked the elementary principle that in an action upon a promissory note the burden of proving payment is on the defendant. The complaint pleaded execution of a promissory note for $30,000 and payment thereon in principal and interest of $18,000. Prayer was for $11,630 and interest alleged to be then due. Defendants set up the deed of trust, and the action was tried as one for a deficiency judgment. The answers denied for want of information the amounts paid and the amount due. Plaintiff gave evidence of the proceeds of the trustees' sale credited on the note and of the additional sums admittedly received and credited from the sale of lots reconveyed and removed from the trust lien under the terms of the contract.

 The appellants take an inconsistent position. They argue that, since the portion of the proceeds of lot sales had not been agreed upon, the respondent was not entitled to credit any of said proceeds to payment on the note; that the evidence fails to prove that respondent credited all these proceeds to such indebtedness; and that the court should therefore have found that the security was not exhausted because the respondent had not sold out these lot purchasers after having credited appellants with the proceeds of these sales. They claim that the respondent should have been compelled to prove that the proceeds of sales credited to them on their note were tagged to specific lots with detailed proof of these lots by description of each and the amount credited from each lot. The evidence that all lots were included in the notice of trustees' sale, except those reconveyed under this agreement of the parties, was sufficient to sustain the finding that all lots subject to the trust lien were sold on the foreclosure and that the security of the lien was thus exhausted. If any further proof was

necessary, this finding was supported by the presumptions and legal inferences which must be drawn from the facts proved. These reconveyances giving complete descriptions of the lots reconveyed had been delivered to appellants at their request, and were presumably in their possession at the time of the trial. By the terms of the trust it was agreed that such reconveyances were to be made from time to time ''as said Beneficiary . . . may direct, upon the payment of such portion of the debt secured hereby as may be agreed upon''. The appellants admitted that proceeds of such sales had been applied to a reduction of the debt. The trial court could presume that the regular course of business had been followed—that the reconveyances were made upon request of appellants, that the amount of proceeds applied to the debt had been agreed upon, and that, from appellants' failure to produce the evidence in their possession, the reconveyances covered the precise lot numbers omitted from the notice of sale.

Confusion is then made to appear in the statement of facts relating to the payments made after forfeiture. The Real Estate Corporation had, prior to the forfeiture, issued a number of sales contracts to lots subject to the lien and all of which lots were sold at the trustees' sale. These sales contracts called for periodic instalment payments, and by agreement of the parties made after notice of default, these payments were made to the bank to be held in trust pending the foreclosure sale. Here again the appellants complain that the respondent did not assume the burden of proof. Enough was shown, taken with the legal inferences, to prove that these partial payments all concerned lots covered by the lien of the trust deed at the time the payments were made and that all these lots were sold at the trustees' sale. The agreement first made relating to these sales was, as we said in the opinion, modified before it became effective. By no possible theory could the appellants claim payments made after the trustees' sale upon portions of the property sold under the deed. These moneys were not to be returned to the lot purchasers, but they were to be credited to them as part payment upon the lots sold subject to the lien of the deed of trust. The bank was under no obligation to charge off these moneys against the note any more than it should be required to charge off sales

made of other lots after it had acquired full title to them through the trustees' deed. The deed of trust expressly provided that reconveyances should be made, and credits allowed on the note "while this Deed of Trust remains in force". It did not purport to control the right of the purchaser at the trustees' sale to convey any portion of the property purchased by him or to dispose of the proceeds of sales of such property. The correspondence upon which the appellants rely as creating an agreement to apply these proceeds to the note originated before the sale and at a time when the parties were negotiating a settlement and a new loan. The final agreement that the bank should hold these moneys in trust to be turned over to the purchaser at the trustees' sale and to be credited to the lot purchasers was made upon the earnest solicitation of the Real Estate Corporation to protect the appellants from claims of these lot. purchasers in the event that the bank foreclosed upon the lots covered by their sales contracts.

The petitions for a rehearing are denied.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1937.